**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ASSOCIATION FOR EDUCATION FAIRNESS | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 8:20-CV-2540-PX |
| MONTGOMERY COUNTY DEFENDANTS OF EDUCATION, *et al.* | ) ) ) | |
| Defendants, | ) ) | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*


**REPLY BRIEF OF AMICI CURIAE MONTGOMERY COUNTY BRANCH OF THE NAACP, MONTGOMERY COUNTY PROGRESSIVE ASIAN AMERICAN NETWORK, ASIAN AMERICAN YOUTH LEADERSHIP EMPOWERMENT AND DEVELOPMENT, IDENTITY, INC., AND CASA, INC. IN SUPPORT OF DISMISSAL**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    I.    The Amended Complaint fails to plausibly allege disparate impact ................................... 2

        A.    Plaintiff relies on an incorrect and inaccurate comparator .......................................... 3

        B.    Plaintiff's analysis rests on faulty assumptions .......................................................... 5

    II.    Under *Feeney* and *Arlington Heights*, the Amended Complaint fails to plausibly allege discriminatory intent ........................................................................................................ 8

CONCLUSION ................................................................................................................ 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................8

*Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*,
  996 F.3d 37 (1st Cir. 2021)....................................................................................4

*Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*,
  No. 21-CV-10330, 2021 WL 1422827 (D. Mass. Apr. 15, 2021) ..........................5

*Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*,
  No. 21-cv-10330, 2021 WL 4489840 (D. Mass. Oct. 1, 2021) ...............................5

*Chase v. Dep't of Pub. Safety & Corr. Servs.*,
  No. 18-cv-2182, 2020 WL 1914811 (D. Md. Apr. 20, 2020).................................3

*CNF Constructors, Inc. v. Donohoe Const. Co.*,
  57 F.3d 395 (4th Cir. 1995) ..................................................................................2

*Coal. for TJ v. Fairfax Cnty. Sch. Bd.,* No. 22-1280, 2022 WL 986994 (4th Cir.
  Mar. 31, 2022)................................................................................................ *passim*

*Hayden v. Cnty. of Nassau*,
  180 F.3d 42 (2d Cir. 1999)....................................................................................4

*Jana-Rock Constr., Inc. v. N.Y. Dep't of Econ. Dev.*,
  438 F.3d 195 (2d Cir. 2006)..................................................................................9

*Marsh v. United States*,
  Civil Action No. 14-cv-3559, 2016 WL 247563 (D. Md. Jan. 20, 2016)................7

*N.C. State Conf. of NAACP v. McCrory*,
  831 F.3d 204 (4th Cir. 2016) ................................................................................5

*Neal v. United States*,
  No. 19-cv-1033, 2022 WL 374526 (D. Md. Feb. 8, 2022)......................................3

*Pers. Adm'r of Mass. v. Feeney*,
  442 U.S. 256 (1979)............................................................................................8, 9

*Vaughns v. Bd. of Educ. of Prince George's Cnty.*,
  574 F. Supp. 1280 (D. Md. 1983), *aff'd in part, rev'd in part on other
  grounds*, 758 F.2d 983 (4th Cir. 1985) ...................................................................4

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977).............................................................................................5, 8, 9

**Federal Statutes**

42 U.S.C. § 2000d..................................................................................................................9

**State Statutes**

Ill. Comp. Stat. Ann. 5/14A-30.............................................................................................7

N.J. Stat. § 18A:35-36............................................................................................................7

**Regulations**

34 C.F.R. § 100.3(b)(2)..........................................................................................................9

**INTRODUCTION**

Plaintiff contends that Montgomery County Public Schools' ("MCPS") move to adopt a process that more fairly identifies qualified students for admission stacks the deck against Asian American students. In its bid to return to the "pre-field test equilibrium," Pl. Opp'n to Mot. to Dismiss Am. Compl. ("Pl. Opp'n") 11 n.6, Plaintiff dismisses the disparate impact of the pre-field test policy on Black and Latino students as a "supposed problem." *Id.* at 1. This callous disregard of the harm to Black and Latino students, whose admission rates were artificially depressed under the prior MCPS admissions policies, underscores the untenable logic in Plaintiff's arguments, which are premised on allegations of the exact same harm to Asian American students.

Taken at face value, Plaintiff's bid to dispose of the lottery process and return to an "equilibrium" in which Black and Latino students account for less than 8% and 6% percent of admitted magnet students respectively, Metis Report 101, requires that the Court endorse one of two propositions: 1) it is acceptable for MCPS to continue to deny qualified Black and Latino students equal access to educational opportunities so long as every class of admitted students mirrors the racial proportions of the classes admitted immediately before the adoption of the field test, or 2) Black and Latino students are disproportionately unlikely to possess the work ethic and natural talent necessary to access and benefit from the magnet programs. Both propositions are abhorrent and unsupported by any factual allegations in the Amended Complaint and thus cannot sustain a claim for relief under the Fourteenth Amendment's Equal Protection Clause.

Talent is everywhere; opportunity is not. Plaintiff asserts that animus toward Asian American students motivated MCPS's adoption of a lottery-based middle school magnet admissions process ("lottery"). But in order for all students to truly "compete on equal footing" for admission to the magnet programs, as Plaintiff purports to desire, Am. Compl. ¶ 4, MCPS's admissions policy must also afford Black and Latino students an equal opportunity to access and

1

benefit from the magnet programs. That is why the proper disparate impact baseline is the overall student body (the applicant pool), as Proposed Intervenors' opening brief explained, rather than past years' admission results as Plaintiff contends. Moreover, Plaintiff cannot concoct an inference of discriminatory intent from MCPS's efforts to create equal footing through a race-neutral lottery process. Accordingly, the Amended Complaint should be dismissed.

## ARGUMENT

## I.     The Amended Complaint fails to plausibly allege disparate impact

Plaintiff's allegation of disparate impact relies on its claim that a single component of a multivariable admissions process—local norming of the MAP-R and MAP-M scores—causes the alleged impact. Yet Plaintiff's Opposition does not and cannot correct their failure to plausibly allege that MCPS's use of local norming—a race-neutral, common, and pedagogically sound method of identifying students for placement in selective admission programs—disparately harms Asian American students. Plaintiff's disparate impact allegation fails because it relies on (1) the wrong comparators; and (2) faulty assumptions.

As an initial matter, Proposed Intervenors note that the Court is free to dismiss the Amended Complaint for failure to allege disparate impact. Plaintiff urges the Court to simply adhere to its prior reasoning on this issue. *See* ECF 35, at 34–35; Pl. Opp'n 11. But as Plaintiff correctly concedes, this Court is not bound by the conclusions in that opinion; the law of the case doctrine is discretionary. Pl. Opp'n 4 n.1; *see also CNF Constructors, Inc. v. Donohoe Const. Co.*, 57 F.3d 395, 397 n.1 (4th Cir. 1995) (the "law of the case doctrine is discretionary and not mandatory").

The Court should exercise its discretion to reconsider its disparate impact analysis for three reasons. *First*, the Court did not previously have adversarial briefing on the issue. *See* ECF 21 and 22. *Second*, the Amended Complaint challenges a new and materially different admissions process

2

based on a different set of factual allegations. *Chase v. Dep't of Pub. Safety & Corr. Servs.*, No. 18-cv-2182, 2020 WL 1914811, at *12–14 (D. Md. Apr. 20, 2020) (declining to apply the law of the case doctrine in motion to dismiss an amended complaint because an "amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits" and "different facts will lead to a different legal analysis"). *Third*, as discussed below, a recent Fourth Circuit decision—issued after this Court's prior opinion and the filing of the Amended Complaint— counsels a different approach. *See infra*, Part I.A; *Neal v. United States*, No. 19-cv-1033, 2022 WL 374526, at *30–32 (D. Md. Feb. 8, 2022) (reviving dismissed negligent supervision claim due to intervening Fourth Circuit authority).

### A.    Plaintiff relies on an incorrect and inaccurate comparator

As explained in Proposed Intervenors' opening brief, the relevant comparison in the K-12 admissions context is between an affected group's representation in the applicant pool (here, the overall student population) and its representation among those selected for the program. In *Coalition for TJ v. Fairfax County School Board*, a case addressing a similar admissions policy challenge also brought by Plaintiff's counsel, the majority of a three-judge panel for the Fourth Circuit stayed the district court's order enjoining the revised admissions process, finding that the school board was likely to succeed on the merits in defending the new policy. No. 22-1280, 2022 WL 986994, at *1 (4th Cir. Mar. 31, 2022). As Judge Heytens explained in his concurring opinion, the "relevant comparator for determining whether this race neutral admissions policy has an outsized impact on a particular racial group is the percentage of applicants versus the percentage of offers." *Id.* at *3. Comparing "the percentage of applicants versus the percentage of offers . . . targets more directly the core question for assessing disparate impact: whether members of one group have, proportionally, more difficulty securing admission than others." *Id.*

Judge Heytens' analysis is consistent with other authorities from the K-12 context that

Proposed Intervenors cited in their opening brief. *See* Amici Br. 5–6; *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, 996 F.3d 37, 46 (1st Cir. 2021) ("*Boston Parent II*") (holding that plaintiffs were unlikely to succeed in challenge to magnet school admissions policy because the policy had no disparate impact "as compared to a random distribution of invitations"); *Vaughns v. Bd. of Educ. of Prince George's Cnty.*, 574 F. Supp. 1280, 1304 (D. Md. 1983), *aff'd in part, rev'd in part on other grounds*, 758 F.2d 983 (4th Cir. 1985) (comparing "[B]lack children . . . in the [gifted and talented program] relative to their population in the school system as a whole"); *Gallup-McKinley Cnty. Schs. Resol.*, OCR Case No. 08-11-5002 (2017) (comparing "the number of American Indian students enrolled in the District and the number of American Indian students who participate in the District's [gifted and talented] program and honors and AP courses"). Moreover, this comparison between the candidate pool and the offer pool is well suited to resolution on a motion to dismiss. *See Hayden v. Cnty. of Nassau*, 180 F.3d 42, 46, 51–52 (2d Cir. 1999) (affirming grant of a motion to dismiss employment claim for failure to sufficiently plead disparate impact of selection exam's results relative to representation in the candidate pool).

Nevertheless, Plaintiff continues to insist that "the proper baseline is the pre-field test equilibrium." Pl. Opp'n 11 n.6. As Judge Heytens explains, however, this before-and-after approach "relies on the wrong comparator." *Coal. for TJ*, 2022 WL 986994, at \*3. Judge Heytens could find no authority supporting "the proposition that current government policy creates a floor against which all future policies will be judged," and cautioned that such an approach "would, if adopted, make it exceedingly difficult for government actors to change existing policies that have

a real (albeit unintentional) racially disparate impact."[1] *Id.*

Indeed, as other authorities previously cited by Proposed Intervenors explain, the disparate impact jurisprudence does not require such a counterproductive result. Adopting Plaintiff's position to use the results of a prior, inequitable policy as a baseline for disparate impact would cement "a variable consequence" of a school district's own policies into a constitutional "baseline against which all future [outcomes] must comport." *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, No. 21-cv-10330, 2021 WL 4489840, at *15 n.20 ("*Boston Parent III*") (D. Mass. Oct. 1, 2021). But a former status quo that disproportionately excluded Black, Latino, and low-income students must not be the "equilibrium" to which the school district must forever adhere. The "Equal Protection Clause is not a bulwark for the status quo." *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, No. 21-CV-10330, 2021 WL 1422827, at *14 n.18 (D. Mass. Apr. 15, 2021) ("*Boston Parent I*").[2]

### B.      Plaintiff's analysis rests on faulty assumptions

Plaintiff fails to cite any allegation in the Amended Complaint that the lottery process disparately impacts Asian American students. At the outset, Plaintiff effectively concedes in its Opposition that the lottery process, when compared to the field test process, does not disparately

---

[1] The district court in *Coalition for TJ* relied on *N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016) "in support of its statement that a 'simple before-and-after comparison' is the proper method for assessing disparate impact.'" *Coal. for TJ*, 2022 WL 986994, at *3. But, as Judge Heytens explains, *McCrory* "simply does not say that. To the contrary, in addressing whether certain voting procedures disproportionately burdened African Americans, *McCrory* specifically *rejected* an election-to-election comparison of voter turnout to assess disparate impact." *Id.* (citing *McCrory*, 831 F.3d at 232–33).

[2] According to Plaintiff, Proposed Intervenors' assertion that Plaintiff uses the wrong comparator "is untenable because it would permit MCPS to engage in racial balancing without having to justify its action under strict scrutiny." Pl. Opp'n 11 n.6. This argument misconstrues the analysis required under *Arlington Heights* to determine whether strict scrutiny is triggered. In addition to disparate impact, courts look to whether racially discriminatory intent motivated the adoption of the policy. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977).

impact Asian American applicants. Pl. Opp'n 11 n.6. Plaintiff states that its comparison of Asian American enrollment in the STEM programs under the field test process with the lottery process "only . . . demonstrate[s] that the lottery and local norming *have not improved the situation* for Asian-American students." *Id*. Plaintiff merely makes the conclusory assertion that "the Court's discussion of disparate impact from last September remains accurate even under the new process." Pl. Opp'n 13. But the Amended Complaint challenges an entirely new admissions process that is distinct from the field test process in multiple ways and warrants its own legal analysis. *See supra* at 2–3. Applying the proper comparators, there was no disparate impact on Asian American students because they gained admission to these programs at a rate higher than their inclusion in the student body as a whole. *See* Amici Br. 7–8.

Plaintiff maintains that local norming "makes it harder for Asian American students to enter the lottery pool." Am. Compl. ¶ 89. But that conclusory assertion amounts to no more than speculation as to the impact of local norming on Asian American students. Plaintiff assumes that Asian American students are disparately impacted by local norming of MAP scores either because 1) they are likely to score higher than children of other races who score in the 85th percentile or above, or 2) they are disproportionately concentrated in the low-poverty band of schools for purposes of MCPS's local norming regime. Pl. Opp'n 9–11. Both assumptions are not only speculative, but also rely on unfounded stereotypes.

As to the first assumption, Plaintiff pleads only that Asian American students score higher than students of other races on the MCAP test. The Amended Complaint does not allege that the MCAP is used in the lottery process or that Asian American students score higher on the MAP, the test that is actually used in the lottery process. Am. Compl. ¶ 89. Mere speculation that Asian Americans would score higher than other races on MAP tests based on data from a completely

different test is insufficient to survive a Motion to Dismiss.

As to the second assumption, Plaintiff's allegations that Asian American students are concentrated in the low-poverty bands are of no moment given that Black and Latino students are similarly concentrated in high-poverty bands—so both groups must disproportionately compete against other members of their racial groups for inclusion in the lottery.[3] Amici Br. 13. The Amended Complaint, therefore, provides no basis to conclude that any impact from such clustering falls on Asian American students more than other racial groups. Plaintiff further ignores that 23% of Asian American elementary school students attend Title I schools, and thus are not competing against Asian American students in low-poverty bands. *See id.* at 13; Mot. to Intervene Ex. D ¶ 16 (Dkt. No. 69) ("The low-income families that AALEAD serves often lack the resources and time to prepare students for standardized tests."). By Plaintiff's own logic, these Asian American students stand to benefit from local norming.

Plaintiff's speculative inference of disparate impact from the mere use of race-neutral local norming is especially unwarranted given that local norming is a common and widely used pedagogical tool. In fact, current guidance from the Maryland Department of Education encourages the use of local norming.[4] And some state legislatures require it. 105 Ill. Comp. Stat. Ann. 5/14A-30; *see also* N.J. Stat. § 18A:35-36 (mandating that boards of education consider the

---

[3] This data, available on government websites, may be considered at the motion to dismiss stage. *See Marsh v. United States*, Civil Action No. 14-cv-3559, 2016 WL 247563, at *2 (D. Md. Jan. 20, 2016) (considering a government website in granting a motion to dismiss).

[4] MCPS, Regional Middle School Magnet Admission Process: Overview & Frequently-Asked Questions p. 2, https://docs.google.com/document/d/1in8H2GM2fA-V3knp5ijlWT2mcbxdvbs9Ul9NCA1HgwE/edit ("[T]he current draft of Gifted and Talented Definitions from the Maryland State Department of Education includes the use of local norms as part of the gifted and talented identification process."). Plaintiff cited this document in the Amended Complaint. Am. Compl. ¶ 90 n.54.

National Association for Gifted Children guidance, which encourages local norming). These state regulators and legislatures encourage local norming because comparing a student's scores to a state or national average fails to identify whether she is underchallenged in her own classroom, whereas "local norms . . . are better at answering the question of who in a given learning environment is most likely to be underchallenged and require additional interventions."[5]

In essence, Plaintiff's conclusory and unsupported allegations boil down to little more than stereotyping and speculation. Plaintiff, therefore, fails to raise a plausible inference of disparate impact, and its insufficient allegations cannot survive a Motion to Dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.   Under *Feeney* and *Arlington Heights*, the Amended Complaint fails to plausibly allege discriminatory intent

The Amended Complaint fails to allege discriminatory intent against Asian American students under controlling Supreme Court precedent. Well-established equal protection law requires that a plaintiff challenging a facially neutral policy as discriminatory must show "more than intent as volition or intent as awareness of consequences," but rather that the decisionmaker acted "at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). However, Plaintiff seeks an inference of discriminatory intent based on "awareness of consequences" only, arguing that such intent can be inferred from MCPS's policy change in response to the Metis Report's conclusion that magnet admissions were under-identifying qualified Black and Latino students. In other words, Plaintiff asks the Court to discard *Feeney's* causal requirement and instead infer

---

[5] Scott J. Peters, et al., *Local Norms for Gifted and Talented Student Identification: Everything you Need to Know*, 44 GIFTED CHILD TODAY 2 (Apr. 2021).

discriminatory intent where the policy was adopted "merely 'in spite of'" any potential adverse impact on an identifiable group.

However, as Judge Heytens explained, this causal "aspect of *Feeney*'s holding operates as a critical limitation on the potential to lodge constitutional challenges to facially neutral laws of all stripes." *Coal. for TJ*, 2022 WL 986994, at *4. To find intentional discrimination in the absence of an allegation that MCPS was motivated, at least in part, to harm Asian American students would be "flatly inconsistent" with *Feeney*. *Id.* (noting that the "Supreme Court has repeatedly stated that it is constitutionally permissible to increase racial (and other) diversity through race neutral means" and that "[g]iven these decades of guidance, it would be quite the judicial bait-and-switch to hold that such race neutral efforts – much less the *race blind* policy at issue here – are also subject to strict scrutiny").

Plaintiff relies on *Arlington Heights* to argue that the Board's awareness of racial disparities is evidence that the lottery constitutes "racial balancing." Pl Opp'n 7. But awareness of racial disparities in access to educational programming does not evince discriminatory intent. MCPS is legally obligated to remedy policies that deny equal educational opportunities by unfairly excluding Black and Latino students. *See, e.g*., 42 U.S.C. § 2000d; 34 C.F.R. §100.3(b)(2). And implementing the lottery process to more fairly allocate scarce educational opportunities among qualified students in a race-neutral manner cannot in any meaningful sense be described as "racial balancing." *See Jana-Rock Constr., Inc. v. N.Y. Dep't of Econ. Dev.*, 438 F.3d 195, 211 (2d Cir. 2006) (clarifying that a desire to alleviate discrimination against "some disadvantaged groups" is not the same as "an intent to discriminate against other groups").

Indeed, Plaintiff's counsel has elsewhere implicitly recognized that *Arlington Heights* and *Feeney* do not support a finding of discriminatory intent in this context. Following the Fourth

Circuit's stay order in *Coalition for TJ*, the *TJ* plaintiff (represented by the same counsel here) filed a brief arguing that the Supreme Court should adopt a novel interpretation of *Arlington Heights* and *Feeney* where a "zero-sum process" is involved or "where the government relies on an interest in promoting diversity" because "*the only way* to increase the proportion of Black and Hispanic students admitted is to change the criteria in a way that makes it disproportionately harder for Asian-American students to get in." *See* Emergency App. to Vacate Stay Pending Appeal at 14, 22, *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, No. 21A590 (Apr. 8, 2022) (emphasis added). Framed in these terms, this argument carries the unmistakable implication that Black and Latino applicants are so unlikely to be talented enough or hard working enough to merit admission to magnet programs that an admissions process would have to be rigged for Black and Latino applicants to successfully gain admission. This reasoning eviscerates *Feeney's* causal requirement by implying that any policy change that precedes an increase in the representation of Black and Latino students, who historically have been denied equal access to educational opportunities, is *per se* racial discrimination against Asian Americans. Thankfully, that is not the law. This Court should reject Plaintiff's invitation to further such meritless arguments. Indeed, controlling precedent holds that rational basis review applies to a policy like the one at issue here that is race neutral and adopted "merely 'in spite of'" any potential adverse impacts on an identifiable group. And the new admissions policy indisputably satisfies rational basis review.

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that this Court grant Defendants' Motion to Dismiss the Amended Complaint under Rule 12(b)(6) for failure to state a claim.

Date:   May 16, 2022                              Respectfully submitted,


                                                  */s/ Maraya N. Pratt*
                                                  Maraya N. Pratt (Fed. Bar No. 20880)
                                                  **BALLARD SPAHR LLP**
                                                  111 S. Calvert Street, 27th Floor
                                                  Baltimore, MD 21202
                                                  Phone: (410) 528-5600
                                                  Facsimile: (410) 528-5650
                                                  prattmn@ballardspahr.com

                                                  Leslie E. John
                                                  Elizabeth V. Wingfield
                                                  Kayla R. Martin
                                                  **BALLARD SPAHR LLP**
                                                  1735 Market Street
                                                  Philadelphia, PA 190103
                                                  Phone: (215) 665-8500
                                                  Facsimile: (215) 864-8999
                                                  johnl@ballardspahr.com
                                                  wingfielde@ballardspahr.com
                                                  martinkr@ballardspahr.com

                                                  *Pro Hac Vice Admittee*

                                                  Jin Hee Lee
                                                  Michaele N. Turnage Young
                                                  Michael Skocpol
                                                  NAACP LEGAL DEFENSE &
                                                  EDUCATIONAL FUND, INC.
                                                  700 14th Street NW, Suite 600
                                                  Washington, DC 20005
                                                  Telephone: (202) 682-1300
                                                  jlee@naacpldf.org
                                                  mturnageyoung@naacpldf.org
                                                  mskocpol@naacpldf.org

                                                  *Pro Hac Vice Admittee*

                                                  Niyati Shah
                                                  Eri Andriola^
                                                  ASIAN AMERICANS ADVANCING
                                                  JUSTICE-AAJC
                                                  1620 L St. NW

Suite 1050
Washington, D.C. 20036
Telephone: (202) 296-2300
Facsimile: (202) 296-2318
NShah@advancingjustice-aajc.org
EAndriola@advancingjustice-aajc.org
*Admitted only in New York. D.C. practice*
*limited to Federal Courts.*
*Pro Hac Vice Admittee*

Francisca D. Fajana
LATINOJUSTICE PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
Telephone: (212) 319-3360
FFajana@latinojustice.org

*Pro Hac Vice Admittee*

*Attorneys for Proposed Intervenors*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed on May 16, 2022, via the Court's electronic filing system and is available to all counsel of record for viewing and downloading.

*/s/ Maraya Pratt*
Maraya N. Pratt, Fed. Bar No. 20880
**BALLARD SPAHR LLP**
111 S. Calvert Street, 27th Floor
Baltimore, MD  21202
Phone:  (410) 528-5600

13