UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ASSOCIATION FOR EDUCATION FAIRNESS,<br><br>                              Plaintiff,<br><br>v.<br><br>MONTGOMERY COUNTY BOARD OF EDUCATION, et al.,<br><br>                              Defendants. | Civil Action No. 8:20-cv-02540-PX |

**PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT**
**[Fed. R. Civ. P. 60(b)]**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION AND BACKGROUND ........................................................................1

    A.    First Amended Complaint and Dismissal.......................................................1

    B.    Newly Discovered Information Shows Effect
          of Local Norming on Lottery Eligibility ......................................................3

ARGUMENT.......................................................................................................................4

CONCLUSION....................................................................................................................8

## TABLE OF AUTHORITIES

*Ass'n for Educ. Fairness v. Montgomery Cty. Bd. of Educ.*,
    560 F. Supp. 3d 929 (D. Md. 2021) ..................................................................................2, 4, 6–8

*Clayton v. Ameriquest Mortgage Co.*,
    388 F. Supp. 2d 601 (M.D.N.C. 2005) ...........................................................................................5

*Coalition for TJ v. Fairfax County School Board*,
    No. 22-1280, 2022 WL 986994 (4th Cir. Mar. 31, 2022) ..............................................................2

*Fairfax v. CBS Corp.*,
    2 F.4th 286 (4th Cir. 2021) ............................................................................................................6

*Hong Tang v. Schmoke*,
    No. SAG-19-2965, 2021 WL 810341 (D. Md. Mar. 3, 2021) .......................................................5

*Peria v. Wash. Metro Area Transit Auth.*,
    No. GJH-20-0121, 2021 WL 1926880 (D. Md. May 12, 2021) ................................................4–5

*Personnel Administrator v. Feeney*,
    442 U.S. 256 (1979) .......................................................................................................................7

*Village of Arlington Heights v. Metropolitan Housing Development. Corp.*,
    429 U.S. 252 (1977) .......................................................................................................................7

**Rule**

Fed. R. Civ. P. 60 .............................................................................................................. *passim*

**Other Authority**

Montgomery County Board of Education,
    *Montgomery County Public Schools 2021-2022 Schools at a Glance*,
    http://ww2.montgomeryschoolsmd.org/departments/regulatoryaccountability/
    glance/currentyear/SAAG2022.pdf ................................................................................................4

Pursuant to Rule 60 of the Federal Rules of Civil Procedure, Plaintiff Association for Education Fairness (AFEF) respectfully seeks relief from this Court's July 29, 2022, judgment dismissing its First Amended Complaint.

## INTRODUCTION AND BACKGROUND

### A.     First Amended Complaint and Dismissal

In its First Amended Complaint, AFEF alleged that Montgomery County Public Schools' (MCPS) criteria for admission into its four magnet middle school programs was implemented at least in part to limit the number of Asian-American students who could enroll in the programs. ECF No. 51 ¶¶ 102, 105. The current criteria were adopted following a three-year "field test" based on the recommendation of a report from Metis Associates suggesting that MCPS "revise the criteria and process used to select students for these programs" due to "significant racial and socioeconomic disparities in the enrollment and acceptance rates." *Id.* ¶¶ 31, 46–52, 83–84 (quoting Metis Report at v). As part of that field test, MCPS began using "local norming" of Cognitive Abilities Test (CogAT) scores to determine admissions to the magnet programs. *Id.* ¶ 67. Elementary schools were divided into low-, moderate- or high-poverty bands, and students' CogAT scores were only compared to students within their same band. *Id.*

Starting with the 2021 admissions cycle, MCPS abandoned some aspects of the field test procedure, including scrapping use of the CogAT and instituting a lottery for making final admissions decisions. *Id.* ¶ 86. However, MCPS retained the use of local norming to determine which students were eligible for the lottery pool. *Id.* ¶ 87. AFEF's First Amended Complaint alleged that the continued use of local norming to determine who made it into the lottery pool was intended to—and did—depress Asian-American admission to the magnet programs, furthering MCPS' goal of obtaining racial balance. *Id.* ¶¶ 87–90, 102.

1

On July 29, 2022, this Court granted MCPS' motion to dismiss the First Amended Complaint. ECF Nos. 99, 100.[1] Although the Court had originally found admissions data from the field test sufficient to support allegations of disparate impact on Asian-American students, *see Ass'n for Educ. Fairness v. Montgomery Cty. Bd. of Educ.*, 560 F. Supp. 3d 929, 952–53 (D. Md. 2021) (*AFEF I*) (also at ECF No. 35), it found similar data from the current process insufficient because "the percentage of admitted Asian American students so substantially outpaces the percentage representation among all applicants." ECF No. 99 at 15. The change of position was apparently prompted by a lone concurrence in the Fourth Circuit's grant of a stay pending appeal in a different case, *Coalition for TJ v. Fairfax County School Board*, No. 22-1280, 2022 WL 986994, at *3 (4th Cir. Mar. 31, 2022), where Judge Heytens argued that the racial composition of the applicant pool should be the baseline for measuring disparate impact in an intentional discrimination claim. *See* ECF No. 99 at 14–15. In this case, because Asian-American students still earned more magnet program seats than their proportion in the applicant pool—considered as the entire fifth grade class, rather than those eligible for the lottery—the Court concluded that AFEF could not demonstrate disparate impact. *Id.* at 15–16.

The Court also concluded that AFEF had not demonstrated discriminatory intent. In the process, the Court criticized AFEF for relying on Maryland Comprehensive Assessment Program (MCAP) data, which is not used in the magnet admissions process, to support its allegation that the criteria for lottery eligibility disproportionately disadvantage Asian-American students. *Id.* at 23. Even acknowledging the MCAP data, the Court thought that the First Amended Complaint did not plausibly establish that it was more difficult for Asian-American students to enter the lottery.

---

[1] On August 4, 2022, the Court corrected its Memorandum Opinion and Order to include an amicus that had been inadvertently omitted. *See* ECF No. 101.

2

The Court concluded that "[g]iven that the final selection for magnet admissions is wholly randomized, it is just as possible that the disparity" between high level MCAP scores and magnet program placement was "due to chance as it is to local norming or some other change to the admissions process" and that "the MCAP variance by itself does not make plausible that the [revised admissions process] burdens Asian American students." *Id.*

> **B.  Newly Discovered Information Shows Effect of Local Norming on Lottery Eligibility**

Throughout its multi-year process of overhauling magnet middle school program admissions, MCPS has revealed little about how either the field test or the lottery work in practice. *See* ECF No. 51 ¶¶ 85, 87. During the expanded field test, MCPS locally normed CogAT scores so that students were only compared during the evaluation process to students who attended an elementary school in the same socioeconomic "band" as theirs. *Id.* ¶ 67. When MCPS shifted to a lottery, it stopped using the CogAT, but it used locally normed scores from the Measure of Academic Progress (MAP) assessments in mathematics and reading in a similar manner to determine lottery eligibility. *Id.* ¶ 87. But MCPS had revealed almost nothing about how these new socioeconomic bands worked—including the all-important threshold MAP scores for students in each band. But two recently-released documents—obtained through a public records request submitted by the Montgomery County Council of PTAs' Gifted Education Committee and made public on Facebook—show how MCPS uses local norming of the MAP scores to shape the lottery pool. *See* Zhang Decl. ¶¶ 7–8 & Ex. 1–2.

The two new documents make clear that MCPS' use of socioeconomic bands and local norming for lottery eligibility has disproportionately harmed Asian-American students. One document shows how MCPS divided elementary schools into five separate socioeconomic bands—from low to high FARMS (students receiving free and reduced-price meals)—while the

second document shows the effect of local norming based on these bands. *Id.* ¶ 8. The difference is stark. Students at schools in the band with the lowest FARMS rate (i.e., with the highest socioeconomic status) had to score in the 93rd percentile nationally for mathematics and the 92nd percentile nationally for reading on the MAP to be entered into the respective lotteries for the STEM or Humanities magnet programs. *Id.* Yet students in the band with the highest FARMS rate (i.e., with the lowest socioeconomic status) only had to score in the 60th percentile for math and 70th percentile for reading to gain eligibility. *Id.* The schools in the former category have a substantially higher Asian-American student population.[2] In light of this data, it is not a speculative proposition that Asian-Americans disproportionately must achieve higher MAP scores to gain eligibility to the lottery. This Court should therefore reconsider its judgment dismissing the First Amended Complaint, grant AFEF relief from that judgment, and reopen the case for discovery.

## ARGUMENT

Under Rule 60, "a court may relieve a party from an adverse judgment if the party shows that the motion is timely, that it has a meritorious defense to the action, that the opposing party would not be unfairly prejudiced by having the judgment set aside, and that one or more of the six grounds set forth in Rule 60(b) is satisfied." *Peria v. Wash. Metro Area Transit Auth.*, No. GJH-

---

[2] As AFEF alleged, Asian-American students are highly clustered in low-FARMS schools. ECF No. 51 ¶ 67. The data—of which this Court may take judicial notice, *see AFEF I*, 560 F. Supp. 3d at 946 n.13—bears this out. Of the 25 MCPS elementary schools that are at least 20% Asian American, 17 are classified in the "low" FARMs band and the remaining 8 are in the next lowest band, low-moderate. *See* http://ww2.montgomeryschoolsmd.org/departments/regulatoryaccountability/glance/currentyear/SAAG2022.pdf (school data for Diamond, Lakewood, Snowden Farm, Stone Mill, Travilah, Wayside, Cedar Grove, Spark M. Matsunaga, Wilson Wims, Cold Spring, Clarksburg, Fallsmead, DuFief, Beverly Farms, Potomac, Farmland, Ronald McNair, Little Bennett, Seven Locks, William B. Gibbs, Jr., Bells Mill, Bayard Rustin, Luxmanor, Burning Tree, and College Gardens Elementary Schools). None of the schools classified in the "moderate high" FARMS band are more than 11.5% Asian American, and all but one of the schools classified as "high" are less than 5% Asian American (with the other being 5.5%).

20-0121, 2021 WL 1926880, *3 (D. Md. May 12, 2021). One of the six grounds for relief in Rule 60(b), and the one on which AFEF relies, is "newly discovered evidence" that could not have been discovered with reasonable diligence until after the motion to dismiss was granted. Fed. R. Civ. P. 60(b)(2). To satisfy this ground for relief, AFEF must show that the new evidence: (1) was not available to it before the judgment was issued; (2) could not have been discovered with due diligence; and (3) was material and would likely have changed the outcome of the proceedings had it been in the record. *See Clayton v. Ameriquest Mortgage Co.*, 388 F. Supp. 2d 601, 609–10 (M.D.N.C. 2005).

All of the Rule 60 criteria are satisfied. This motion is timely—it was filed within the time allotted to file a notice of appeal, *see Hong Tang v. Schmoke*, No. SAG-19-2965, 2021 WL 810341, at *1 (D. Md. Mar. 3, 2021) (holding that such timing is *per se* reasonable under Rule 60), and within a few weeks of AFEF discovering the new evidence. *See* Zhang Decl. ¶¶ 7, 9. Nor is there any unfair prejudice to MCPS. It is not unfair prejudice to reopen a case where new evidence would have permitted AFEF to amend its complaint, as is true with the newly discovered evidence here. And AFEF could not reasonably have discovered the new evidence—which was obtained under a public records request and publicized by a group unrelated to AFEF on August 15 and 16, 2022—while this litigation was pending. *Id.* ¶ 7. The newly discovered evidence is instead the very type of evidence that AFEF would have sought and expected to obtain in discovery in this case, once it was permitted. Moreover, AFEF had been unsuccessful on multiple occasions in its attempts to obtain useful data on the magnet program admissions process from MCPS, including information related to the use of MAP scores to determine lottery eligibility. *Id.* ¶ 6.

Thus, the dispositive question for purposes of Rule 60 is whether the new evidence is likely to have changed the outcome of MCPS' motion to dismiss. More specifically, does the new

evidence—added to what AFEF alleged in the First Amended Complaint—"suffice to carry [the] complaint over the line between possibility and plausibility"? *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021) (internal quotation marks omitted). And in two specific areas, it does.

*First*, the new evidence shows that MCPS' admissions data comparing the proportion of Asian-American students who are admitted to the magnet program with the proportion of Asian-American students in the entire fifth grade class does not tell the whole story. Contrary to the Court's assertion that Asian-American students face no disparate burden, the newly discovered evidence shows that Asian-American students disproportionately must obtain substantially higher MAP scores than students of other races to be eligible for the lottery. This is the same effect the Court observed in its opinion denying MCPS' motion to dismiss the challenge to the field test criteria—the only difference under the revised admissions process is that the burden on Asian-American students occurs at the step immediately before the final admissions decision. *See AFEF I*, 560 F. Supp. 3d at 952–53 ("With local norming, high-performing students, including Asian Americans, who score in the highest percentiles nationally will, in all likelihood, rank lower if only compared to their local peers."). Whether it is used to make the final admissions decision or to determine who is eligible for the lottery pool, MCPS' local norming disproportionately limits Asian-American students' chances to access the magnet programs.

Judge Heytens' concurrence in *Coalition for TJ*—which is not binding on this Court—did not account for the difference between a simple before-and-after comparison of Asian-American admissions and a more detailed analysis of the disproportionate burdens these students face trying to gain admission to a selective school. But more fundamentally, it simply cannot be true as a matter of law that any group earning more seats than its proportion of the applicant pool has not been the victim of discrimination. To take a simple example—suppose four racial groups (A, B,

C, and D) each comprise 25% of the applicant pool, but one group (A) is earning 50% of the seats under a race-neutral, competitive application process. Under the Supreme Court's decisions in *Village of Arlington Heights v. Metropolitan Housing Development. Corp.*, 429 U.S. 252 (1977), and *Personnel Administrator v. Feeney*, 442 U.S. 256 (1979), could the Board of Education, for the purpose of reducing A's representation, devise a racial proxy that disproportionately subjects members of group A to more difficult criteria, so long as group A's members ultimately still earn more than 25% of the seats? Certainly not. *See Feeney*, 442 U.S. at 279 (discriminatory intent exists when a policy is implemented "at least in part 'because of,' not merely 'in spite of'" its adverse impact on a particular racial group). The new evidence in this case makes it plausible that Asian-American students are disproportionately burdened by local norming of MAP scores, such that AFEF has plausibly alleged disparate impact irrespective of the continued success of Asian-American students who overcome that burden.

*Second*, the new evidence fills a gap the Court identified in demonstrating discriminatory intent—that the First Amended Complaint did not allege anything specific regarding local norming of MAP scores. ECF No. 99 at 23. It confirms what the MCAP scores suggested—that Asian-American students would obtain more seats at the magnet programs absent local norming. This Court has already acknowledged that AFEF plausibly alleged MCPS implemented the field test "at least in part, to readjust the racial composition of the magnet programs." *AFEF I*, 560 F. Supp. 3d at 953. If local norming contributes to that effort by adjusting the racial composition of the lottery pool, it does not require an analytical leap to find that it is also plausible that the revised lottery system was designed in part to continue the field test's racial effect. Indeed, available data suggest that it has done so quite effectively. *See* ECF No. 99 at 15.

7

AFEF recognizes that there is not perfect continuity among the decisionmakers who implemented the field test and those who implemented the lottery. Yet, "given the significant resources of time and money poured into the Metis Report and the resulting field test criteria," *AFEF I*, 560 F. Supp. 3d at 949, it is implausible that MCPS simply cast aside the aims described in the Report when it decided to implement the new criteria—criteria that still included one of the aspects (local norming) that made the field test suspect in the first place. AFEF does not ask the Court to presume MCPS' discriminatory intent forever. But it submits that the new evidence makes it at least *plausible* at this stage of the case that the decisionmakers chose to implement a lottery in the way they did *at least in part* because local norming would help retain the racial result of the field test, to the detriment of Asian-American students. That plausibility is sufficient to overcome MCPS' motion to dismiss.

## CONCLUSION

AFEF respectfully requests that the Court grant its motion for relief from the judgment and reopen this case for discovery.

Dated: August 26, 2022.

Respectfully submitted,

/s/ Glenn E. Roper

| | |
|---|---|
| JOSHUA P. THOMPSON* | GLENN E. ROPER, D. Md. No. 21382 |
| Cal. Bar No. 250955 | Pacific Legal Foundation |
| CHRISTOPHER M. KIESER* | 1745 Shea Center Drive, Suite 400 |
| Cal. Bar No. 298486 | Highlands Ranch, Colorado 80129 |
| ERIN E. WILCOX* | Telephone: (720) 344-4881 |
| N.C. Bar No. 40078 | Facsimile: (916) 419-7747 |
| Pacific Legal Foundation | GERoper@pacificlegal.org |
| 555 Capitol Mall, Suite 1290 | |
| Sacramento, California 95814 | |
| Telephone: (916) 419-7111 | |
| Facsimile: (916) 419-7747 | |
| JThompson@pacificlegal.org | |
| CKieser@pacificlegal.org | |
| EWilcox@pacificlegal.org | |
| *Pro Hac Vice | |

*Counsel for Plaintiff Association for Education Fairness*

8